UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

**CIVIL ACTION NO. 1:05CV-44-M**

**JAMES HARRISON MASSEY**                                                   **PLAINTIFF**

**V.**

**MBNA AMERICA BANK, N.A.**                                                **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Motions to Dismiss and/or Summary Judgment by Defendant, MBNA America Bank, N.A. ("MBNA"). Having been fully briefed by both parties, the matters are ripe for decision. For the reasons discussed below, Defendant's motions are granted in part and denied in part.

**I. Background**

Plaintiff's spouse, Tamara Massey, applied for and received a credit card from MBNA in 1997. The card remained current and in good standing until sometime in 2003. Plaintiff, James Harrison Massey ("Massey"), and Defendant disagree on whether Plaintiff was an "authorized user" on the MBNA credit card account. Both parties agree, however, that the Plaintiff assumed no liability on the MBNA credit card account. In 2003, MBNA initiated efforts to collect a delinquency owed by Tamara Massey. Persons identified to be MBNA employees called the Massey residence up to 19 times per day. During these conversations, the MBNA representatives indicated Plaintiff was personally liable on his wife's debt and that

if Plaintiff did not pay, MBNA would "see to it that derogatory credit information" would be given to the credit reporting agencies.

Plaintiff attempted to acquire financing to start a business in April 2004.  It was then that Plaintiff discovered MBNA had furnished allegedly incorrect credit information to credit reporting agencies which generated a disparaging credit score and report.  Plaintiff was denied the credit necessary to commence his business due in part to the credit information supplied by MBNA.  Plaintiff notified MBNA of the incorrect information in his credit report, but the report was not corrected.

On April 15, 2005, the Plaintiff filed a pro se complaint alleging various claims arising as a result of MBNA's furnishing of credit information and its allegedly harassing debt collection practices.  MBNA seeks dismissal of what it calls Plaintiff's "credit claims" for failure to state a claim.  It also seeks summary judgment on what it calls Plaintiff's "harassment claims."

## II.  Legal Standards

### A. Standard for Fed. R. Civ. P. 12(b)(6) Dismissal

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court must construe the complaint in a light most favorable to the plaintiffs, accept all the factual allegations as true, and determine whether the plaintiffs undoubtedly can prove no set of facts in support of their claim that would entitle them to relief.  Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996), cert. denied, 520 U.S. 1251 (1997). In reviewing complaint on motion to dismiss for failure to state claim upon which relief may

be granted, a court is not bound to accept alleged legal conclusions or unwarranted factual inferences.  Claybrook v. Birchwell, 199 F.3d 350 (6th Cir. 2000).  A court may consider pleadings and exhibits thereto in deciding a Fed. R. Civ. P. 12(b)(6) motion.  Weiner, D.P.M. v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997).  A Fed. R. Civ. P. 12(b)(6) motion tests whether the plaintiffs have stated a claim for which the law provides relief.  Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir. 1994).

**B.  Summary Judgment Standard**

The summary judgment standard requires that the Court find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.  The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

### III. Discussion

The Plaintiff's complaint alleges in paragraph six that MBNA intentionally furnished inaccurate credit information to credit reporting agencies which damaged his credit rating. In paragraph seven, Plaintiff alleges that MBNA threatened, intimidated and harassed him in an attempt to collect a credit card debt for which he had no legal responsibility.  In paragraph

3

eight, Plaintiff claims that he suffered various types of damage as a result of MBNA's wrongful conduct.

MBNA maintains that all of the Plaintiff's state law "credit claims" which are related to its furnishing of credit information are preempted by the federal Fair Credit Reporting Act ("FCRA"). Additionally, MBNA asserts that the Plaintiff cannot state a claim under FCRA. The Court will first analyze whether the Plaintiff's state law "credit claims" are preempted and then turn to an analysis of the appropriate provisions of FCRA. The Court will lastly analyze the Plaintiff's "harassment" claims.

**A. Preemption of State Law Claims Relating to Reporting of Credit Information.**

The FCRA has two separate preemption provisions contained in §§ 1681t(b)(1)(F) and 1681(h)(e) which pertain to furnishers of credit information. Section 1681t(b)(1)(F) provides "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . § 1681s-2, relating to the responsibilities of persons who furnish information to consumer reporting agencies." Section 1681t(b)(1)(F) provides furnishers of credit information with a grant of absolute immunity when the furnisher of credit is giving information to credit reporting agencies regarding consumers. Stafford v. Cross Country Bank, 262 F.Supp.2d 776, 785 (W.D.Ky. 2003). The older provision, §1681(h)(e), provides furnishers of credit information with qualified immunity from state claims "in the nature of defamation, invasion of privacy, or negligence," unless they provided false information rendered with malice or wilful intent to injure a customer. Id., 15 U.S.C. §1681(h)(e). In Stafford, the Court interpreted the absolute preemption provision to only

4

include claims related to a bank or creditor's reporting function, while §1681(h)(e) applies to any function independent of supplying credit information. Id. at 787. Thus, Plaintiff's state law claims which are based on MBNA's reporting function are completely preempted by FCRA. The Plaintiff's state law claim of loss of economic and business opportunities relates directly to MBNA's reporting of credit information and is thus, preempted.

**B. FCRA Claims**

Section 1681s-2 of FCRA has two provisions which impose a duty on furnishers of credit information to report accurate information to Credit Reporting Agencies. The Court must evaluate both to assess whether the Plaintiff states a cause of action under either 15 U.S.C. § 1681s-2, subsections (a), (c), and (d); or subsection (b).

Subsection (a) of § 1681s-2 imposes obligations upon furnishers of credit information to provide Credit Reporting Agencies with accurate information and subsections (c) and (d) provide the remedies available for a violation of § 1681s-2(a). Id. at 782. Specifically, subsections (c) and (d) limit enforcement of § 1681s-2(a)'s provisions to federal agencies, officers, and state officers for negligent or willful violation of the duties imposed in subsection (a). Id. Because there is no private right of action for violations of § 1681s-2(a), the Plaintiff cannot bring suit for MBNA's actions in providing inaccurate information to the credit reporting agencies. Id. at 782-783.

There are, however, no such limitations on remedies for § 1681s-2(b). Private consumers may bring a "cause of action against a furnisher of credit information for either negligent or willful violation" of subsection (b) under FCRA's general provisions establishing

5

civil liability, §§ 15 U.S.C. 1681n and 1681o. Id. at 783. Nevertheless, subsection (b) pertains only to the requirements of a furnisher of credit information to investigate its own actions after receiving notice of a dispute regarding incorrect information supplied to a credit reporting agency. Id. In fact, the furnisher's responsibility to investigate is contingent on first receiving notice from one of the credit reporting agencies. Id. The Plaintiff has not alleged any such facts in his complaint. Therefore, the Court finds that the Plaintiff's complaint fails to state a claim under § 1681s-2(b).

## C.  The Harassment Claims

MBNA seeks summary judgment on what it terms the Plaintiff's "harassment claims." The Defendant divides the Harassment claim into individual claims of defamation, negligence, intentional infliction of emotional distress, interference with business opportunity and loss of consortium. The Plaintiff, in his response, states that he did not plead a defamation claim, but that his complaint states the following claims: 1) harassment, 2) negligence, 3) intentional infliction of emotional distress, 4) loss of economic and business opportunities, and 5)interference with marital relationship. The Court will address each claim Plaintiff maintains he has alleged and one that he has not.

Although a claim under the federal Fair Debt Collection Practices Act ("FDCPA") was not specifically plead, MBNA asks for summary judgment on any such claim under the FDCPA citing that, as a bank, it is not a "debt collector" as required by the act. The Court agrees. Case law on the FDCPA is well settled on the point that "a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when

collecting their accounts." Id. at 794 (citing Zsamba v. Community Bank, 63 F.Supp.2d 1294, 1299-1300 (D.Kan.1999); Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 107 (6th Cir.1996); Meads v. Citicorp Credit Services, Inc., 686 F.Supp. 330 (S.D.Ga.1988)). Defendant is therefore entitled to summary judgment on any potential claim by Plaintiff that MBNA did not follow the requirements of the FDCPA when attempting to collect the debt.

From the Plaintiff's response it appears his negligence claim is based on an alleged failure on the part of MBNA to exercise reasonable care in the hiring and training of employees engaged in collection activities and that such failure resulted in the harassment and intimidation from which he suffered. It is difficult to separate this claim of negligence from the claim of harassment. Nevertheless, the complaint itself does not state a negligence claim and MBNA's motion to dismiss it is granted. Paragraphs six and seven of the complaint allege only intentional and deliberate conduct. Negligence is referred to only once in paragraph eight with respect to "tortious and/or negligent" interference with the marital relationship, which is addressed below.

The Plaintiff's intentional interference with a marital relationship claim is not recognized by Kentucky courts. Intentional interference with a marital relationship was abolished by the Kentucky Supreme Court in Hoye v. Hoye, Ky., 824 S.W.2d 422 (1992). The Court questions whether there is a claim of "negligent" interference with a marital relationship but surmises if it does exist it would resemble what Kentucky recognizes as a loss of consortium claim. This is evident from the Plaintiff's response. However, like the Plaintiff's purported negligence claim, the facts supporting such an allegation are not pled in

the complaint.  The so-called interference with marital relationship claim is only mentioned in paragraph eight as one type of damage the Plaintiff suffered from the claimed wrongdoing which is set out in paragraphs six and seven.  Thus, the Court concludes that a loss of consortium claim is not stated in the Plaintiff's complaint.

The loss of economic and business opportunities claim is preempted as set out above. It relates directly to MBNA's reporting of credit information.

Remaining are Plaintiff's "harassment" claim and his intentional infliction of emotional distress claim.  It is not clear to the Court if the Plaintiff's "harassment" claim is an independent cause of action recognized under Kentucky law.  The Plaintiff obviously believes it is but the Defendant did not analyze it as such.  The Court is cognizant of KRS 446.070, which allows a private cause of action for damages to any person injured by the violation of any statute.  KRS 525.070 and 525.080 prohibit harassment and harassing communications. The court in Stafford allowed a similar harassment claim to survive summary judgment, thus, the court will considered it as a viable claim.

If the "harassment" claim is a viable claim, then Plaintiff's tort of outrage/IIED claim should be dismissed since such a claim serves only as a gap filler under Kentucky common law.  See Taylor v. University Medical Center, Inc.  2005 WL 1026190, at *3  (W.D.Ky. 2005) (citing Banks v. Fritsch, 39 S.W. 3d 474,481 (Ky. App. 2001)).

The Court is reluctant to dismiss these claims at this stage.  The Defendant raises a statute of limitations defense which may prove valid once discovery reveals the time period during which the alleged harassment took place.  However, the record at this time does not

8

show that the Defendant is entitled to judgment as a matter of law.  The Court will allow the harassment claim and the IIED claim to proceed.  After discovery, which perhaps should be limited at first to the statute of limitations issue, other dispositive motions may be filed.

Lastly, Plaintiff's motion to strike the affidavit supplied by MBNA to establish the mechanism for supplying credit information to the credit reporting agencies is moot, as the Court decided this matter on statutory interpretation of FCRA.

## Conclusion

For the reasons set forth above, the motion by Defendant to dismiss all "credit" claims is **granted.**  The Defendant's motion for summary judgment on the remaining issues is **granted in part and denied in part.**  The Plaintiff's motion to strike is **moot.**

cc: Counsel of Record
105CV44mbnaDismissSJM1.wpd